FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 FEB 23 AM 8: 37
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 111-270 |
| | ) | |
| CLEVELAND DAVID HALL, II | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Cleveland David Hall, II, is before the Court charged with one count of possession with intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Doc. no. 1, Indictment.) The Court previously determined that a psychiatric examination of Defendant was warranted to determine whether Defendant may suffer from a mental disease rendering him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, as well as to determine the existence/non-existence of insanity at the time of the charged offenses; therefore, the Court ordered that Defendant be examined pursuant to 18 U.S.C. §§ 4241 and 4242. (See doc. no. 26.) Defendant was then transported to the Federal Detention Center in Miami, Florida, to undergo a mental examination, and Dr. Jorge Luis, licensed forensic psychologist, prepared a forensic report concerning the assessment of Defendant during his time in Miami; Dr. Luis's report was provided to the Court and to counsel for both the government and for Defendant. (Doc. no. 28, filed under seal on Dec. 8, 2011.) Once Defendant was returned to this District in February, 2012, the Court set the matter down for a hearing on February 21, 2012.

## I. THE HEARING

Dr. Luis testified by telephone at the February 21st hearing. Upon presentation of his credentials and without objection from the defense, the Court accepted Dr. Luis as an expert. Dr. Luis then provided testimony, subject to cross-examination by defense counsel, concerning the findings in his forensic report. Dr. Luis explained that upon Defendant's arrival at the Miami facility, he participated in the initial interview and completed one psychological measure, the Kaufman Brief Intelligence Test - Second Edition (KBIT-2), which yielded a finding of "average" intelligence. (Doc. no. 28, p. 5.) However, upon commencement of the Booklet Category Test - Second Edition (BCT), Defendant discontinued his cooperation in the third of seven portions of the test, and Defendant refused further testing. An evaluator met with Defendant on two subsequent dates, September 28 and October 5, 2011, but both times Defendant refused further testing.

Despite this lack of cooperation, Dr. Luis was able to offer his expert opinion that "there is no evidence that [Defendant] is currently experiencing the active phase of a mental disorder that would render him unable to understand the nature and consequences of the proceedings against him at this time. Therefore, it is recommended that the defendant be found Competent to Stand Trial." (Id. at 7.) Dr. Luis further opined that Defendant "was not suffering from the symptoms of a mental disorder or defect that impaired his ability to appreciate the nature and quality of the wrongfulness of his acts." (Id. at 8.)

In particular, Dr. Luis recognized in Defendant's actions a type of defense strategy that "is not based on confused or delusional thinking, or any symptoms of an active phase of mental illness." (Id. at 7.) Rather, Defendant appears to have chosen a strategy increasing

2

in popularity among criminal defendants in Federal Courts in which a individual follows a pattern of non-cooperation in court proceedings based on the following assertions:

> [A]n individual can copyright and/or claim his own name and/or person as property, that all crime is commercial crime, and that the Courts do not have legitimate jurisdiction (some sites refer to the United States not being on the "Gold" Standard since 1933 as to the cause), to name a few. Reportedly, many defendants have filed multi-million dollar lawsuits against judges and prosecutors for uttering the defendant's name during trials. These claims arise from the assertion that by filing with the Uniform Commercial Code one establishes ownership over oneself and is thus a "sovereign being" and a "Secured Party Creditor." Some website postings provide "Court Survival Guide(s)" and detail all types of arguments similar to those proposed by the [D]efendant (i.e., UCC Filing Secured Party Creditor, jurisdiction of courts, Admiralty Jurisdiction, filing lawsuits against Court personnel, etc.)."

(Id.) Indeed, as explained in the Order directing that Defendant undergo a psychiatric evaluation, Defendant has exhibited this pattern of non-cooperation and frivolous motions filing from the beginning of this case. (See doc. nos. 13, 26.)

During the limited evaluation in which Defendant participated, he exhibited organized, rational, sequential, and coherent thought processes, and he displayed adequate attention and concentration skills. (Doc. no. 28, p. 4.) Defendant demonstrated an understanding that he had been charged with intent to distribute cocaine, and he understood that a conviction on this charge could result in his incarceration for a period of 10 years to life. (Id. at 7.) Moreover, Defendant had no mental health concerns and did not demonstrate any behavior requiring psychological interventions or special attention. (Id. at 4-5.)

Dr. Luis also testified that Defendant had no behavioral difficulties during the entirety of the 45 days allotted for his metal evaluation, nor during the time in which he remained in the Miami facility until the U.S. Marshal's Service returned Defendant to this District. Dr.

3

Luis further testified that throughout his placement at Miami, Defendant functioned adequately; his hygiene, grooming, and eye contact were all adequate, and Defendant was oriented to his circumstances. In sum, Defendant had no problems whatsoever during his time in Miami.

Although appointed defense counsel did cross-examine Dr. Luis, no evidence was offered by the defense to contradict Dr. Luis's finding of competency. In fact, Defendant stated on the record that he is alive, competent, and capable of handling his own affairs.[1] FTR 2:40.39-.44.

## II. ANALYSIS

The issue before the Court is whether Defendant is competent to stand trial, even though the scope of the Court's Order for a psychiatric examination order was much broader. Title 18 U.S.C. § 4241 provides the standard for determining competency and the consequences for a finding of competency. In pertinent part, the Code section provides:

> **(d) Determination and disposition.**--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241(d).

On numerous occasions, the Supreme Court has recognized that "the criminal trial of an incompetent defendant violates due process." Cooper v. Oklahoma, 517 U.S. 348, 354 (1996) (citing Medina v. California, 505 U.S. 437, 453 (1992); Drope v. Missouri, 420 U.S.

---

[1] Although a transcript of the hearing has not been prepared, the Court has been able to review the proceedings on the Court's recording system, For the Record ("FTR").

4

162, 171-72 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966)). The Eleventh Circuit has suggested a two-part analysis to evaluate competency to stand trial: "(1) determination of whether the defendant suffered from a 'clinically recognized disorder,' and, (2) if so, whether the disorder caused the defendant to be incompetent." James v. Singletary, 995 F.2d 187, 188 (11th Cir. 1993) (*per curiam*) (citing Bundy v. Dugger, 850 F.2d 1402, 1408 (11th Cir. 1988)). As to the second prong of the test, a defendant is considered competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and . . . a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (*per curiam*); see also United States v. Nickels, 324 F.3d 1250, 1252 (11th Cir. 2003) (*per curiam*) (recognizing Dusky competency standard). Here, viewing the information in Dr. Luis's report in light of the above standards, and recognizing that Defendant did not offer any evidence of his own at the hearing - let alone evidence to contradict Dr. Luis's conclusions[2] - there is no reason to doubt Dr. Luis's recommendation that Defendant should be found competent to stand trial. Moreover, Defendant's appearances before the Court and filings on the record (*e.g.*, doc. no. 13), further support the conclusion that Defendant's behavior is not the result of any mental issues but rather is a calculated defense strategy based on certain tenets of the "Sovereign Citizens" movement as described in Dr. Luis's report.

Therefore, based on the record developed to date in this case and evidence adduced at the February 21st hearing, including Dr. Luis's forensic report and testimony, the Court

---

[2]In fact, as set forth previously, Defendant professed his competency at the hearing. FTR 2:40.39-.44.

**FINDS** by a preponderance of the evidence that Defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding;[3] Defendant also has a rational, as well as factual, understanding of the proceedings against him.

### III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant be found competent to stand trial pursuant to 18 U.S.C. § 4241.

SO REPORTED and RECOMMENDED this 23rd day of February, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[3]The issue of Defendant's desire to proceed without the assistance of his appointed counsel will be addressed by separate order.